# CASES

IN THE

# SUPREME JUDICIAL COURT,

OF THE

## STATE OF MAINE.

---

MARY G. WALKER, appellant from decree of Judge of Probate. JOHN E. WALKER, appellant from same.

Knox. Opinion June 3, 1890.

*Probate. Allowance to widow. R. S., c. 65, § 21.*

The probate court, in making an allowance to a widow out of her husband's estate, may properly take into consideration the amount of private estate the widow is possessed of, not received from the property of her husband.

There is such a variety of circumstances to be considered in awarding allowances to widows, that no rule in any considerable degree general can be framed to govern them. All depends upon the exercise of a reasonable, judicial discretion.

The complicated circumstances of the present case reviewed in the opinion of the court.

ON REPORT.

These were two appeals from probate tried together. In the first, the petitioner appealed from a decree in that court granting her an allowance of two thousand dollars, from her deceased husband's estate. The appeal alleged that the allowance was not in accordance to the degree and estate of her husband, and the state of the family under her care, and, therefore, inadequate and much smaller in amount than it should be.

VOL. LXXXIII.　2

In the second case, the appellant, one of the heirs by a former marriage, alleged in his reasons of appeal that the sum allowed by the probate judge was excessive and unjust; that the situation of the widow, as regards her own private estate, not requiring any allowance to be made; that her degree and her husband's estate, and the condition of the family under her care, with what she had received as an advancement, were such that no allowance should have been made to her.

*T. P. Pierce*, for Mary G. Walker.

*C. E. Littlefield*, for John E. Walker.

Allowance is a matter of discretion and not of right. *Kersey* v. *Bailey*, 52 Maine, 198; *Gilman* v. *Gilman*, 53 *Id*. 192. Statute has been re-enacted in the revisions of 1871 and 1883, and is a legislative adoption of the construction placed upon it prior to the revision. *Tuxbury's Appeal*, 67 Maine, 267, and cases cited.

PETERS, C. J. The only question of law arising on the facts reported, and it is not really of much consequence in the present proceeding, is, whether the court in awarding an allowance to a widow out of her husband's estate, has a right to take into consideration the amount of private estate the widow is possessed of, not received from the property of her husband. We think it has. It would be unnatural to exclude such evidence, and difficult for a court to shut its eyes against it. The statute prescribes that an allowance is to be made "according to the degree and estate of her husband and the state of the family under her care." She is a part of the family and her own condition and necessities are to be considered. Certainly, her poverty may be proved, and why not the absence of poverty, or her wealth? Her poverty or her wealth would be an essential part of her condition. An extreme case may illustrate the rule. Suppose a widow has hundreds of thousands of dollars in her own right, and her husband has left but thousands merely, with dependent children not her children. It might amount to cruelty in such case, to decree as much allowance to the widow as would

be proper if she were poor and absolutely without any estate of her own.

And such we have supposed the practice to be. The cases in this state seem to indicate this view. *Gilman* v. *Gilman*, 53 Maine, 192 ; *Kelsey* v. *Bailey*, 52 Maine, 200. In *Hollenbeck* v. *Pixley*, 3 Gray, 521, 525, Chief Justice Shaw said, on this question : "It is a question solely of her actual necessities. . . . . The amount of the property left by the husband, and the amount of the separate property and means of the wife, are also important circumstances bearing on the question of necessities."

There is such a variety of circumstances to be taken into consideration in allowance cases, that no rule in any considerable degee general can be framed to govern them. All depends upon the exercise of a reasonable, judicial discretion.

In the case at bar the following facts appear. The widow is forty-one. She was married in 1882, her husband dying in 1889. He was many years older than she, having left two children by a former wife, son and daughter, thirty years and upwards old. He occupied, during the second marriage life a commanding position in his profession of medicine, held a good rank in society generally, and lived in a style comporting with his social position. She was accustomed before and during her married life to easy circumstances. She is now feeble, and possesses less than the average health of one of her age. The husband left in her possession their boy six years old. To his son by the first wife he furnished a complete collegiate and professional education, expending money generously to that end, and that son is now prosperously situated in business, occupying the professional field vacated by the father. The daughter is fortunately married and well situated in the world, and has received since her marriage some aid towards the support of herself and her child from her father.

On a careful examination of the evidence, the following computations are deducible : The husband left a dowable real estate worth four thousand seven hundred and fifty dollars; personal property worth seven thousand two hundred and fifty dollars ; and rights and credits worth three thousand two hundred and fifty dollars. His debts may be estimated at three

thousand five hundred dollars. After an allowance is deducted she will have her distributive share of the personal estate, including rights and credits, one third thereof, and her child will inherit one third of the residue. It should not be overlooked, however, that, should her child die during minority, leaving any estate, it would descend to his brother and sister.

The widow's separate estate is in personal assets, just about ten thousand dollars, coming from the estate of her father, the late A. P. Gould of Thomaston. Her husband gave to her and her son, by manual delivery, in bonds one thousand eight hundred dollars, and a note for four hundred dollars, in all two thousand two hundred dollars, and the allowance we make is upon the supposition and condition that this gift is valid, and not to be disturbed by the representatives of the husband's estate.

Other questions have arisen affecting the husband's estate, but we are unable to give them much of a practical footing in the calculations made by us. The widow claims six hundred and fifty dollars for money alleged to have been received from her father and lent to her husband. Of this there appears to be no outside evidence, and she can not for herself be a witness. *Preble* v. *Preble*, 73 Maine, 362. She further claims that she put into her husband's hands, but whether as a loan or gift is left uncertain, another sum of one thousand dollars, received by her from her father, and of this she has some evidence, but upon the validity of this claim we make no intimation, either for or against it. On the other hand, the two oldest children allege a claim against the estate, of from eight hundred dollars to twice that sum, for money in the hands of their father, received from their mother's private estate, and belonging to them. They can not be witnesses for the same reason that the widow can not testify.

Under all these apparent uncertainties and complications, we can only approximately and somewhat arbitrarily fix any result. The judge of probate allowed two thousand dollars to the widow. We reduce that sum to one thousand five hundred dollars.

*The decree to be accordingly.*

VIRGIN, LIBBEY, EMERY, FOSTER and HASKELL, JJ., concurred.